LAWRENCE REDMOND V. THE STATE.

No. 3683.   Decided November 10, 1915.

Rehearing denied December 8, 1915.

**1.—Wilful Desertion of Wife—Abandonment—Venue—Jurisdiction—Residence.**

Where, upon trial of wilful wife desertion and abandonment, the evidence showed that defendant and his wife began to reside in the county of the prosecution about the middle of August, 1914, and that the grand jury returned the indictment for abandonment on the 24th of February, 1915, the venue of the case was properly laid in said county, although the prosecutrix left the same temporarily, and went outside of the State for several months, the evidence showing that she expected to return to said county as soon as conditions got better with reference to their family relations, etc.   Davidson, Judge, dissenting, holding that neither the residence nor the abandonment was in said county.

**2.—Same—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded for other reasons, the overruling of the application for continuance need not be considered.

**3.—Same—Evidence—Hearsay.**

Where, upon trial of abandonment, the State was permitted to introduce testimony as to matters occurring between third parties and prosecutrix not in the presence of the defendant, the same was error.

**4.—Same—Evidence—Rebuttal Testimony—Motive.**

Where, upon trial of abandonment, the defendant attempted to show that the prosecuting witness, his wife, actually deserted him, instead of defendant deserting her, the defendant should have been permitted to show that she did not love him, and that she prosecuted him for not receiving certain sums of money, etc.

**5.—Same—Evidence—Hearsay.**

Where, upon trial of abandonment of wife, the State was permitted to introduce in evidence the conversation between the prosecutrix and a Methodist minister, who advised her to see an attorney about the matters of disagreement between herself and husband, in the absence of the husband, the same was error.

**6.—Same—Evidence—Rebuttal.**

Where, upon trial of wife abandonment, the State had been permitted to introduce testimony that the prosecutrix had left the house of her husband's father (where they resided) on account of mistreatment of her by defendant's family, the defendant should have been permitted to introduce testimony in rebuttal that no such mistreatment took place.

**7.—Same—Argument of Counsel—Practice on Appeal.**

Where the judgment was reversed and the cause remanded on other grounds, an objection to the argument of State's counsel need not be reviewed.

**8.—Same—Witnesses Under Rule—Prosecutrix—Practice in County Court.**

Where, upon trial of wife abandonment, the rule for placing the witnesses in charge of an officer was invoked, there was no error in not excluding the prosecutrix, who was also a State's witness, from the courtroom, after she had testified on direct examination, if the State's counsel requested her to remain and assist him.   Davidson, Judge, dissenting.

**9.—Same—Venue—Abandonment.**

Where, upon trial of abandoning the wife, there was nothing in the testimony suggesting a permanent separation at the time the prosecutrix left her

husband temporarily to visit her relatives outside the State, or that she was abandoning defendant, and that her intention was to return to the county of the prosecution, and that she did so return, and that then defendant failed to contribute to her support, and would live with her no longer, the venue was correctly laid in the county of the prosecution where she had resided over six months next preceding the filing of the indictment. Davidson, Judge, dissenting.

Appeal from the County Court of Nueces. Tried below before the Hon. Walter F. Timon,

Appeal from a conviction of wife desertion; penalty, a fine of $250 and sixty days confinement in the county jail.

The opinion states the case.

*Jno. C. Scott, Geo. C. Westervelt,* and *Ramsay, Black & Ramsay,* for appellant.—On question of venue and jurisdiction: Hatch v. State, 174 S. W. Rep., 1062; Swearingen v. Swearingen, 165 S. W. Rep., 16; Carlton v. Carlton, 141 S. W. Rep., 290; Dickinson v. Dickinson, 138 S. W. Rep., 205; McLean v. Randel, 135 S. W. Rep., 1116; Haymond v. Haymond, 74 Texas, 414.

On question of hearsay declarations of third party: Harris v. State, 1 Texas Crim. App., 74; Barbee v. State, 23 id., 199; Crook v. State, 27 id., 198; Cook v. State, 45 Texas Crim. Rep., 412; Hirsch v. State, 50 id., 1; Quinn v. State, 51 id., 155.

On question of rebuttal testimony: Jackson v. State, 115 S. W. Rep., 266; Lawson v. State, 148 S. W. Rep., 587; Burnaman v. State, 159 S. W. Rep., 244.

On question of declarations of third parties in the absence of defendant: Denton v. State, 46 Texas Crim. Rep., 193; Holloway v. State, 64 id., 465.

On question of prosecutrix's motive in leaving the county of the prosecution: Irving v. State, 166 S. W. Rep., 1166.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of witnesses under rule: McMillan v. State, 7 Texas Crim. App., 142; Welhousen v. State, 30 id., 623.

On question of declarations of third parties: Hardin v. State, 55 Texas Crim. Rep., 631; Harris v. State, 56 S. W. Rep., 622.

On question of venue: Hatch v. State, 174 S. W. Rep., 1062.

DAVIDSON, JUDGE.—Appellant was convicted of wilfully deserting his wife, his punishment being assessed at a fine of $250 and sixty days imprisonment in the county jail.

The Acts of the Thirty-third Legislature at page 189 uses this language with reference to wife desertion: "An offense under this Act shall be held to have been committed in the county in which such wife, child or children may have been at the time such abandonment occurred, or in the county in which such wife, child or children shall have resided for six months next preceding the filing of the complaint, information or indictment."

The unquestioned and undisputed evidence shows that defendant and his wife were married in Panama and came to Corpus Christi, where Dr. Henry Redmond and family resided, reaching there about the middle of August, 1914. For reasons not necessary now to discuss she desired to go to Pennsylvania, where her mother and relatives resided. To this her husband was opposed. Finally, however, at her earnest solicitation he did agree, and she left Corpus Christi going to Pennsylvania along about the middle of September to engage in some character of work, if not as a trained nurse, closely connected with it. She says she and her husband were on the friendliest terms and he was very lover-like in his attentions. In December he was at Baltimore attending a medical college with a view of obtaining his diploma as a practitioner in the profession. She went to Baltimore and spent a few days with him and they purposed leaving there about the middle of the month. In going to the depot they seemed to have anticipated the schedule time of the train. While about the depot she says her husband disappeared. She waited until about 2 o'clock the same night and took the train to Philadelphia. That shortly afterward from New York her husband communicated with her. About the 20th of January, 1915, she came to Corpus Christi. That she had wired her husband to meet her at the train, which he failed to do. She went to the hotel and called him up next day. He did not obey her summons. This was about the 21st of January. The grand jury returned this bill of indictment on the 24th of February, 1915. Testifying in relation to the fact of desertion she says her husband deserted her at Baltimore, Md., and that the charge in the indictment that he deserted her in Corpus Christi was a mistake. That he did not do so but deserted her in Baltimore, Maryland. After she left Corpus Christi she was not in Nueces County until January 20 or 21, 1915.

Referring to the statute quoted, it will be seen that a desertion, if a desertion at all, occurred a long time before the expiration of six months, and in fact was only within thirty-five days after her arrival at Corpus Christi or upon reaching Texas. So from any viewpoint this indictment could not be sustained. He did not desert her in Texas, and if this indictment could be sustained from any standpoint, she would have to live in Nueces County six months prior to the prosecution. As the writer understands this record and the facts if such was a desertion it was on her part and not his. There is evidence to the effect that her intention when she left her husband in September may have been a permanent separation on her part. The evidence goes to show that her husband had nothing and was dependent upon his father for a support, and after they reached Corpus Christi in August until she left in September they were supported by the father, Dr. Redmond. At the time appellant did not even have his license to practice medicine. This she makes evident as does her mother-in-law, Mrs. Henry Redmond. Her return to Corpus Christi seemed based on collecting $2480 she claimed he should pay her. So from any viewpoint this indictment can not be sustained.

There are some other questions in the case that possibly it might be well enough to notice in a general way. Application for continuance was overruled. Inasmuch as that question can not arise upon another trial as here presented, its discussion is pretermitted.

There are quite a number of bills of exception set out in the record which are not intended to be treated specifically, but in a general way Mrs. Lawrence Redmond, wife of the defendant, was the principal State's witness, and testified to such things as the State deemed of importance, and among other things she was permitted to state, over objection of appellant, that she "knocked at the door" of the residence of defendant's parents on January 21, 1915. A Mexican came to the door. She was permitted to answer this question: "What did the Mexican say to you?" Appellant was not present and knew nothing about it, and various objections were based upon this matter. In reply to the question she testified that when she knocked at the door of the residence of appellant's parents a Mexican came to the door and told her the defendant's father said she could not see him, the defendant. This testimony was clearly not admissible. It occurred between this witness and the Mexican. The Mexican's statement that appellant's father said she could not see the defendant was a matter occurring between third parties and was inadmissible unless defendant was connected with it. The court was then asked to instruct the jury to disregard and ignore the testimony, which was refused. This the court should have done. The whole matter was erroneous.

There are several questions arising out of the visit of the prosecuting witness to the residence of appellant's father, which are unnecessary to discuss inasmuch as that matter and visit and connected circumstances are not admissible. The other questions will not arise again for that reason.

There is another question asked of the witness on cross-examination: "Do you love him (meaning the defendant)? It was expected to be shown by this testimony that she did not. This was offered as a circumstance to show that the prosecuting witness actually deserted defendant instead of defendant deserting her. We think this, taken in connection with some of the other matters in the bills of exception, should have gone to the jury. It is shown elsewhere she presented to defendant in February some ten days or more before the filing of the indictment a bill for over $2400, setting out various items which she thought defendant ought to pay her. One was for $600 that she said her trousseau cost and various other matters; $60 expenses to Corpus Christi; $60 for her return trip, and $1200 "expenses one year, pending time for divorce to be entered, with expenses, attorney's fees, costs," etc., and the next bill shows that the defendant asked her on cross-examination if this bill had been paid would you have taken this matter before the grand jury? They expected for her to state in reply that if prosecuting witness had received the money called for by the bill, in the aggregate sum of $2480, she would never have instituted criminal prosecution against the defendant. We think these matters ought to have

gone before the jury as they were germane to the question of desertion, especially in the light of the testimony of the prosecuting witness as drawn out by the State. It also tended strongly to show her return to Corpus Christi was for money rather than a renewal of her marital relations with defendant.

Another bill was to the effect that appellant wanted to prove on cross-examination that she having testified that desertion occurred in Maryland and not in Nueces County, why she did not institute the proceedings against him in Maryland. She was not permitted to answer this question. These things are all so connected up that it occurs to us that matter ought to have been investigated inasmuch as the State put these matters before the jury. The defendant had the right to break the force of them as best he could by any legitimate evidence.

Another bill shows the prosecuting witness went to Rev. Dr. Renfro, a Methodist minister at Corpus Christi, and talked with him about her troubles with her husband. She was asked on direct examination by the county attorney what did Dr. Renfro advise her to do about it. Various objections were urged that it was irrelevant, immaterial and incompetent, and would be an expression of the opinion of Dr. Renfro on this controversy, and same was hearsay and defendant was not shown to have been present at the time. All of said objections were by the court overruled, and the witness testified by stating Dr. Renfro, the Methodist minister, advised her to see an attorney about the matter, and she thereupon went to Mr. Todd. All of this was error. Objections should have been sustained. These were matters occurring between Dr. Renfro and prosecutrix about which appellant had no knowledge and was not a party to it. It was a matter occurring between third parties.

While the prosecuting witness, Olive Redmond, was testifying for the State she stated, in substance, that on account of mistreatment of her by Mrs. Henry Redmond, mother of defendant, while she, prosecuting witness, was living at the residence of defendant's parents, she, prosecutrix, left Corpus Christi and went to Philadelphia, and thereafter while Mrs. Henry Redmond was testifying for the defendant she was asked on direct examination this question: "Did you do anything to cause prosecuting witness to leave the house where she was then living with her husband, together with you and Dr. Redmond, his father?" Objection was urged to this by the State, and she was not permitted to answer the question, but she would have answered, had she been permitted, that she had not mistreated the prosecuting witness while she was living with the defendant at his parents' house, and the prosecuting witness had no reason for leaving the house of defendant's parents, where she and her husband were then staying, and without cause left said place in Corpus Christi and went to Philadelphia of her own accord. Several bills of this nature, including three with reference to letters which were written by prosecuting witness, one to Mrs. Henry Redmond and two to her daughter, Catherine Redmond, all in affectionate and endearing terms, were rejected. These letters, as

shown, were written to them after Mrs. Henry Redmond and her daughter, Catherine Redmond, had visited the prosecutrix in Philadelphia. While there they were on amicable relations, and they had prosecuting witness out to lunch with them and showed her different sorts of courtesies and attentions. These letters were written to them after they left Philadelphia and went to New York. They are rather lengthy and unnecessary to be repeated. They discard all idea of any bad treatment on the part of either Mrs. Henry Redmond or Catherine Redmond. These become important because prosecuting witness had testified that she left the Redmonds on account of mistreatment by Mrs. Henry Redmond and Catherine Redmond. The judge seems to have had the idea that because these letters and this testimony of Mrs. Henry Redmond was cumulative of other facts, that, therefore, it was inadmissible. The reason given for its objection was one of the strongest reasons why it should have been admitted. The State had put into this record a great deal of testimony from the prosecuting witness to the effect that she left the Redmond home in Corpus Christi and went to Philadelphia because the family, Mrs. Henry Redmond and Catherine Redmond especially, were making life uncomfortable. This went before the jury. Certainly the defense had a right to meet this testimony. It seems it ought to be regarded as fundamental, independent of the statute, that where an adverse fact is put in evidence against a party, that party can meet such adverse fact with such testimony as is legitimate and which tends to destroy its weight and force. That is one of the first principles of right and justice, and it is expressly so provided by our statute. It is unnecessary to notice further these bills of exception with reference to this treatment of Mrs. Henry Redmond and Catherine Redmond as testified by prosecutrix, and the rejection of the testimony of Mrs. Redmond offered to rebut it.

There are some bills of exception with reference to the argument of counsel, which will not occur upon another trial.

There are quite a number of exceptions to the charges, special charges requested and refused. These will not be discussed in view of what has been heretofore said.

There is another question that may be well enough to notice. The "rule" was invoked and all witnesses were asked to be placed under the "rule." The court excused prosecuting witness from the rule and permitted her to remain in the courtroom by the side of her attorneys during the entire trial. She was the State's main witness, and from the bill of exceptions it appears the rule was invoked as much or more as to her than any other witness in the case. Be that as it may, she was the important witness for the State. A great deal has been written and said about the discretion of a judge in enforcing the "rule." In some cases this court has held the trial court did not abuse the discretion to the extent of requiring a reversal, but we think this case has passed the limit and boundary line. The court certainly abused this discretion in permitting this witness to remain in the courtroom. She was permitted to remain and hear all the testimony. It was upon her

testimony that the State rested the prosecution. She was not an officer of the court, nor necessary to be present in the execution of the duties devolving upon peace officers in and around the court. She was not an attorney in the case. She was the prosecuting witness and seems to have been rather critical in her prosecution. She had the advantage of hearing all the testimony while witnesses for the defense did not. The rule must not be invoked or ought not to be and made to operate an injustice. It certainly ought to come within the well defined limits that requires each case to be kept within the boundaries of fair trial and justice. The discretion of the court was not properly exercised.

There are quite a lot of kindred questions besides those we have mentioned, but they are of the same nature. Without going further into detail we think enough has been said to indicate that if this case should ever be tried again, it must come within the rules already announced. The defendant is entitled to a fair trial, and the right to meet all opposing testimony by any legitimate explanation that is within his power, if conviction must be had after fair trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE, and HARPER, JUDGE.—We concur in the reversal of the case, but we do not agree that a conviction could not be had under the indictment, as it charged a failure and refusal to provide for his wife, and we think she was only gone on a visit to Philadelphia and her home was continuously in Corpus Christi from the time appellant and his wife moved to that place. If, however, the testimony raises the issue that prosecutrix at the time she went to Philadelphia intended to abandon appellant, that issue should be presented in the charge.

We do not think the court erred in not excluding the prosecuting witness from the courtroom. Defendant was in the courtroom, and we think the court would not abuse his discretion in permitting her to remain in the courtroom after she had testified on direct examination, if the State's counsel requested that she be permitted to remain to assist him.

ON REHEARING.

December 8, 1915.

PRENDERGAST, PRESIDING JUDGE, and HARPER, JUDGE.—Appellant has filed a motion for rehearing, in which he earnestly insists that we were in error in holding that Nueces County had jurisdiction to try this cause. The statute under which the conviction was had places the venue of the offense where the abandonment occurred, or where the wife shall have resided the six months immediately preceding the filing of the indictment. Appellant and Mrs. Olive Redmond were married in Panama August 1, 1914, and arrived in Corpus Christi about August 12, 1914, and made their home with the father of appellant in Corpus Christi. They lived together as husband and wife in

Corpus Christi for about one month at the home of appellant's father, when Mrs. Olive Redmond says she went to Philadelphia, where she had a brother, on a visit. Mrs. Redmond testified that when she and appellant were married, appellant told her he had told his parents. However, she says, when they arrived in Corpus Christi, his father, mother and sister denied any knowledge of that fact, and his father seemed to be very bitter and said to Mrs. Redmond at the house where they were residing that she had just as well drive a dagger through his heart as to have taken his boy away from him; that defendant's mother doubted the marriage and asked to see the marriage license, and showed she was very much hurt over the marriage. That, on account of the conduct of appellant's father, mother and sister, things were unbearable. Without going into details of the acts she complains of, she testifies that, on account of their mistreatment of her, it was finally agreed to her going north and visiting her people. There is nothing in the testimony, as we read it, suggesting a permanent separation at that time, or that she was abandoning appellant. About the middle of September she left Corpus Christi, appellant supplying her with a ticket and money to make the trip. She says that when she left on this visit "it was understood between my husband and myself that I would return as soon as conditions got better, and that, if things did not get better, we would get a house to ourselves." That she stayed in Philadelphia with her brother until December 9th, and while there was engaged in social service work. She says she wrote to her husband nearly every day for about three weeks, but during the entire time she was away appellant did not write to her but once. Appellant did not testify. This evidence and other facts and circumstances in the case would raise the issue that appellant at the time he furnished her the ticket and money to go to Philadelphia on a visit intended to abandon her; and, if so, this certainly would give Nueces County jurisdiction. However, she says in December she learned appellant was in Baltimore, and on December 9th she went to see him, and they lived as husband and wife while in Baltimore. This is positive evidence that she intended no abandonment when she left Corpus Christi, and there is nothing in the record that can be so construed, as we read the record. That, when they went to leave Baltimore, they went to the depot together to go to Philadelphia. She says: "We understood that the train would leave Baltimore about 10 o'clock at night, so about 10 o'clock we went to the station and found out the train would not leave until about 2 o'clock in the morning. At that time I was sick and unwell, and my husband knew my condition. I asked him to return to our room and spend the time, which he refused to do, and stated that we would remain at the station. I told him that I did not believe that I was able to stand it, so we went into the station and I began crying, which seemed to anger him. Finally he took me into the ladies' waiting room, where it was more comfortable, and he walked out on the outside of the depot for the purpose of getting some fresh air; about ten thirty he returned to the waiting room and asked me if there

was anything that he could do for me, and I told him 'No.' I never saw him any more after that until I returned to Corpus Christi. I looked for him around the station and could not find him. I stayed at the depot by myself until 2 o'clock and then took the train to Philadelphia. I afterwards learned that he went to New York, and I talked to him over the phone, he asked me to write to him and he promised to write to me." She says she came to Texas in January; and, when she got to San Antonio, she called her husband over the telephone and asked him to come to San Antonio and meet her, but he said he was unable to come after her, and for her to come on to Corpus Christi. That when she got to Corpus Christi she found her husband was not at the depot to meet her, and she went to the phone and called him, and he told her to wait, that he would come down immediately. That she waited for him more than an hour, when she phoned again, but could get no answer. That she went to the home of appellant's father, Dr. Henry Redmond, where her husband was staying, but she was unable to get anyone to answer her summons. That she wrote appellant, but could get no answer; that she did get him over the telephone and he would promise to come to the Nueces Hotel, where she was staying, immediately, but he never came. That she begged for an interview, but could never secure one. That appellant refused to pay her hotel bill, and refused to pay for her room and board while she stayed with Mrs. Woodbridge in Corpus Christi. This testimony certainly, to our minds, places the venue of the case in Nueces County and does not suggest that Mrs. Redmond had or had intended to acquire a residence at any other place than Corpus Christi after she and her husband went there and made it their home in August, 1914; while, on the other hand, the evidence suggests that appellant intended an abandonment when his wife went on a visit to Philadelphia, and, if so, this abandonment took place in Nueces County. There is no more evidence of abandonment taking place in Baltimore, Md., than there is of the abandonment occurring when Mrs. Redmond left to go to Philadelphia on a visit. The unequivocal act of abandonment took place after her return to Corpus Christi. This is the time she was made aware that, in so far as appellant was concerned, he would contribute nothing to her support, and would live with her no longer. But, regardless of when and where the abandonment occurred, the evidence shows that Mrs. Redmond's residence was in Nueces County from and after August. 1914, and the venue of the case was properly laid in that county.

The motion for rehearing is, therefore, overruled.

*Overruled.*

DAVIDSON, JUDGE.—I adhere to what I wrote in original opinion.